UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAZZLING D'NAE HARRIS,<br><br>Defendant. | CASE NO. 3:24-cr-00006<br><br>JUDGE<br><br>INFORMATION<br><br>18 U.S.C. § 1343 |

**THE UNITED STATES ATTORNEY CHARGES:**

### Introduction

### THE UNEMPLOYMENT INSURANCE PROGRAM

1. The Social Security Act of 1935 created a joint federal and state unemployment insurance (UI) system. This system provides benefits to individuals who are unemployed for reasons beyond their control. The purpose of the UI system is (1) to lessen the effects of unemployment through cash payments made directly to laid-off workers, and (2) to ensure that life necessities are met on a weekly basis while the worker seeks employment.

2. State unemployment systems are jointly funded by state and federal funds but administered by the State Workforce Agencies (hereafter "SWA"). In Ohio, the SWA is administered by the Office of Insurance Operations which is part of the Ohio Department of Job and Family Services (hereafter "Ohio SWA"). The U.S. Department of Labor funds each of the respective administrative costs including salaries, office expenses and computer equipment.

3. Under normal circumstances, when state UI benefits are exhausted, they may be supplemented by federal funds appropriated by the U.S. Department of Labor. The federal government provided significant supplemental UI benefits to the states as a result of the COVID-

19 pandemic.

4. On March 18, 2020, the Families First Coronavirus Response Act (FFRA) became law. This law provided additional flexibility for state unemployment insurance agencies and additional federal administrative funding to respond to the COVID-19 pandemic. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (CARES Act) was signed into law (P.L. 116-136). It further expanded individual states' ability to provide financial assistance to the many workers impacted by the COVID-19 pandemic, including workers not otherwise eligible for normal UI benefits.

5. Another recently passed federal UI benefits program is the Federal Pandemic Unemployment Compensation (FPUC) program. The FPUC allowed eligible individuals who are collecting certain UI benefits, including regular unemployment compensation, to receive an additional $600 in federal benefits per week for periods of unemployment ending on or before July 31, 2020. Another such program, the Pandemic Emergency Unemployment Compensation (PEUC) program, allowed individuals who have exhausted their UI benefits under regular unemployment compensation or other programs to receive up to 13 weeks of additional federally funded benefits.

6. Normally (in the absence of fraud), an unemployed worker initiates an unemployment claim ("UI claim"). This can be accomplished by submitting a claim either in person, over the telephone, or via the Internet. The overwhelming majority of UI claims are currently filed online through a state's SWA website. In order to establish UI eligibility, a worker must demonstrate a certain level of earnings in several calendar quarters immediately preceding the filing of a claim. The amount of unemployment benefits that a UI claimant might be eligible for depends on a variety of factors, including, but not limited to, the length of his or her previous

employment and the amount of wages he or she earned.

7. The SWA will either approve or reject a submitted UI claim based on the merits of the application. If approved, the SWA will send UI benefits to the claimant either weekly or bi-weekly. Some SWAs utilize a debit card system in which a debit card is mailed to the address provided by the claimant upon approval of the claim. The claimant may use this debit card just as they would any other debit card. Some SWAs allow claimants to receive UI benefits through a direct bank deposit. On a weekly or bi-weekly basis, claimants are required to fill out a Continued-Claim Form and mail it back to the SWA. Claimants can also certify that they are unemployed on the SWA's website or by telephone. The purpose of filing a Continued-Claim Form is to determine whether the claimant remains unemployed. Once the Continued-Claim Form is received by the SWA, payment is authorized and benefits for that period are either reloaded onto the claimant's existing debit card or the benefits are sent via direct deposit.

8. The amount of weekly UI benefits paid to a claimant is based on the claimant's prior earnings, as reported by their employer for a specified time period called the "base wage" period. These wages are reported to the SWA via a Quarterly Wage and Withholding Report, which is the standard form employers use each calendar quarter when reporting wage information to the SWA. Each Quarterly Wage and Withholding Report contains blank spaces for the employer to provide certain information such as: the employer's name, address, SWA account number, the name and Social Security Number ("SSN") of each employee, and the wages earned by each employee during the quarter in question. Employers are expected to file these reports at the end of each calendar quarter.

9. Prior to submitting these quarterly reports, employers must register with an SWA by submitting a Registration Form for Commercial Employers. This form advises the SWA about a company's existence, and causes the SWA to assign an account number to that company. This

form includes spaces for the company's name, address, the number of employees, the type of business, and other general information.

10. As part of the UI application process, SWAs inquire of every claimant if they are receiving UI benefits from any other states. Claimants are legally prohibited from collecting UI benefits from more than one state at the same time. Claimants who become unemployed and qualify for UI benefits can file for UI from a state other than that in which they reside; however, earned wages must have been reported in the state where the work was performed.

## COUNT 1
### [18 U.S.C. § 1343]
### (Wire Fraud)

11. On or about June 16, 2020, while in the Southern District of Ohio and elsewhere, the defendant, **DAZZLING D'NAE HARRIS**, devised and intended to devise a scheme and artifice to defraud the U.S. Department of Labor, a department of the United States and the Ohio SWA, to obtain money, proceeds and other property by means of false and fraudulent pretenses, representations and promises. The scheme to defraud involved a benefit which was authorized, transported, transmitted, transferred, disbursed, and paid in connection with, a presidentially declared major disaster or emergency as defined in Section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act.

12. It was part of the scheme that the defendant falsely and fraudulently submitted Continued-Claim Forms indicating she had no earnings each week through the COVID-19 pandemic to qualify for UI benefits, when in fact she was earning income from "GO WIRELESS."

13. On or about the date set forth below, in Dayton, Ohio and elsewhere, the defendant, for the purposes of executing the above-described scheme, caused to be transmitted by means of

wire communication in interstate commerce the signals and sounds described below to Sterling, Virginia:

| Count | SWA | Date of Claim | Amount Paid |
|---|---|---|---|
| 1 | Ohio | 6/16/2020 | $22,194.00 |

In violation of 18 U.S.C. § 1343.

KENNETH L. PARKER
UNITED STATES ATTORNEY

_____
AMY M. SMITH
Assistant United States Attorney